# UNITED STATES DISTRICT COURT
for the
Northern District of Texas

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 2:19-MJ-20
)
Electronic devices as set out in Attachment A )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the     NORTHERN     District of     TEXAS    , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, USC, Sections 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

SEE AFFIDAVIT

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

John Carson, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1-23-19

_____
*Judge's signature*

City and state: AMARILLO, TEXAS     Lee Ann Reno, U.S MAGISTRATE JUDGE
*Printed name and title*

# Attachment A

## Property to Be Searched

A black and silver Apple IPhone Model A 1633, FCC ID BCG-E2946A

A gray Samsung cell phone, Model SM-J327T1 IMEI 359214/09/256208/5,

## ATTACHMENT "B"
## LIST OF ITEMS TO BE SEARCH FOR AND SEIZED

### Property to be Searched and Seized

All electronic records relating to violations of Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), including:

    Text messages;
    E-mail messages;
    Voice mail messages;
    Internet browsing history;
    Historical location (GPS) data;
    Photos;
    Video;
    Audio files;
    Calendars;
    Word processing documents;
    Spreadsheets;
    Text files;
    Contact names and telephone numbers;
    Incoming and outgoing call logs; and
    Forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when it was used.

<u>2:19-MJ-20</u>

<u>AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANT</u>

I, John Carson, a Special Agent with the Drug Enforcement Administration, do depose and say:

**Affiant's Qualifications**

1. I have been a Special Agent (SA) with the Drug Enforcement Administration (DEA) since November 2016. I have received basic training at the DEA Training Academy at Quantico, Virginia, I have received advanced narcotics investigation training from the Drug Enforcement Administration at Quantico, Virginia as well as the Texas Narcotics Association as well as other organizations. I am currently assigned as a Special Agent (SA) with the DEA's Amarillo High Intensity Drug Trafficking Area (HIDTA) Group. My duties include, but are not limited to, investigating drug trafficking organizations responsible for the money laundering, smuggling, distribution, and transportation of quantities of illegal controlled substances into and across the United States. I have personally conducted numerous narcotics investigations, including multiple-defendant organized crime cases.

This affidavit is intended to show only that there is probable cause for the requested warrant and does not set forth all of my knowledge about the matters related to the warrant.

**Source of Affiant's Information**

2. I make this affidavit based upon personal knowledge derived from my participation in this investigation and upon information I believe to be reliable from the

following sources:

    A. my experience investigating the distribution of illegal controlled substances and the laundering and transportation of drug proceeds;

    B. oral and written reports, and documents about this investigation that I have received from members of the DEA and the Texas Department of Public Safety Highway Patrol;

    C. discussions I have had personally concerning this investigation with federal and state investigators who are experienced in investigating criminal organizations involved in drug trafficking;

## Purpose of this Affidavit

4. The information contained in this Affidavit is submitted for the sole purpose of supplying probable cause for the issuance of a search warrant for the subject electronic communications device. As shown in the following paragraphs, this device is being used in furtherance of narcotics trafficking. There is probable cause to believe that evidence and instrumentalities of the offenses described herein continue to be located in the subject electronic communications device. The warrant is also being sought to discover evidence pertaining to: (1) possession with intent to distribute a controlled substance namely cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

## Device to be Searched

5. I declare that the facts contained in this Affidavit show that there is probable cause to search the following electronic communications devices:

a. There is in Potter County, Texas, a suspected electronic communications devices (hereinafter referred to as "suspected devices") and more specifically described as a black and silver colored Apple I phone S cell phone, FCC ID BCG-E2946A (device number one), gray colored Samsung cell phone, IMEI 359214/09/256208/5 (device number two). The suspected devices are currently secured at the DEA office located in Amarillo, Texas.

b. The suspected devices are owned by or were in the possession of Brendan MARTIN and Araceli BARRERA on January 4, 2019.

c. The suspected devices which contains the data and information sought is currently in the care, custody, control and management of the members of the DEA in Amarillo, Texas.

**Electronic Storage and Forensic Analysis**

6. A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books or contacts;" sending, receiving, and storing text messages and e-mail; taking, sending,

receiving, and storing still photographs and moving video; recording and maintaining important notes and records; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

7. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools. Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

8. There is probable cause to believe that things that were once stored on the devices may still be stored there, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that files or remnants of such files can be recovered from electronic devices months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on an electronic device, the data contained in the

file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, an electronic device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, storage media on these electronic devices contain electronic evidence of how a device has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Users of electronic devices typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

9. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the

electronic devices were used, the purpose of its use, who used it, and when it was used. There is probable cause to believe that this forensic electronic evidence might be on the electronic device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the device was in use. System files can record information about the dates files were created and the sequence in which they were created.

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

**Facts in Support of Probable Cause**

Affiant does believe that searching the device identified in this affidavit is likely to produce evidence that the offenses described herein has been, is, or will be committed and that the person or persons and/or the suspected party has committed, is committing, or will commit the offenses.

10. On January 4, 2019 at approximately 2:00 p.m., Affiant Drug Enforcement Administration Special Agent (SA) John Carson began a criminal drug investigation at 1374 U.S. Hwy 60 Panhandle, Texas 79068. On January 4, 2019 at approximately 12:19 p.m., Texas Department of Public Safety Trooper Kendall Styles initiated a traffic stop on a 2017 white Nissan Sentra with Virginia License Plate of VVJ6477 on eastbound Interstate 40 at mile marker 101 for speeding, cutting in after passing and failing to signal

a lane change in violation of the Texas Transportation Code. The driver of the vehicle was identified as Brendan Terrence MARTIN and the passenger was identified as Araceli BARRERA. While speaking with the occupants of the vehicle, Trooper Styles observed indicators of criminal activity. The Driver, MARTIN stated to Trooper Styles he and BARRERA were travelling to Little Rock, Arkansas. To go to his grandfather's funeral. The passenger, BARRERA stated they were traveling to Arkansas to visit MARTIN'S friend. Trooper Styles noticed that the rental agreement for the vehicle indicated the vehicle was rented on January 3, 2019 in Ontario, California, and was due back to the same location on January 6, 2019 at 6:00 p.m. Trooper Styles found this suspicious given the very short time to travel from California to Arkansas and return for a funeral or a visit given the amount of time needed to make the drive just one way which is approximately twenty three (23) hours. This was also an indication of criminal activity.

11.   Trooper Styles smelled the odor of marijuana in the vehicle and conducted a probable cause search of the vehicle. Trooper Styles located two small containers containing a green leafy substance Trooper Styles believed to be marijuana in a back pack in the floorboard of the front passenger seat of the vehicle. Trooper Styles then located a bag in the rear driver's side floorboard containing MARTIN'S clothes and one black with clear plastic wrap bundle containing a hard crystal like substance and a clear zip lock style bag containing a crystal like substance. Trooper Styles through his training and experience believed the substance to be methamphetamine. MARTIN and BARRERA were both transported to the TX DPS Panhandle office for further investigation.

12. SA John Carson and TX DPS Criminal Investigation Division SA Chris Ecker responded to the TX DPS Panhandle, TX Office to assist with the investigation. At approximately 2:07 p.m., SA John Carson read BARRERA her *Miranda* Warnings and BARRERA waived those warnings and agreed to speak with SAs Carson and Ecker. BARRERA stated this trip started when MARTIN called her and asked her if she wanted to go on a trip to Arkansas. BARRERA stated she had never been to Arkansas before. BARRERA stated she had no knowledge of the narcotics in the vehicle. BARRERA stated in the interview she did not know MARTIN'S friend or his name and MARTIN did not tell BARRERA the name of the friend they were going to visit. BARRERA did state that MARTIN had received a facetime call from someone last night or this morning while driving (January 3rd or 4th, 2019).

13. BARRERA was then asked if she had made another trip with MARTIN similar to this one. BARRERA then stated she flew with MARTIN in December of 2018 from California to DFW airport and then drove with MARTIN and a friend of MARTIN'S to Little Rock, Arkansas. BARRERA stated BARRERA, MARTIN and MARTIN'S friend stayed in a hotel for approximately a day and half while in Little Rock, AR. BARRERA stated she stayed in the hotel room during the majority of the trip to Little Rock, AR. A hotel receipt was located in MARTIN and BARRERA's vehicle for an Extended StayAmerica in Little Rock, Arkansas, dated December 20, 2018. BARRERA stated MARTIN was on the phone in the hotel room with the same person who face timed MARTIN last night or this morning while driving (January 3rd or 4th, 2019).

14. At approximately 2:55 p.m. SAs Carson and Ecker interviewed MARTIN. SA Carson read MARTIN his *Miranda* Warnings and MARTIN waived his rights and chose to speak with agents Carson and Ecker. MARTIN stated around November of 2018 an unidentified male MARTIN used to be in jail with, asked MARTIN if MARTIN wanted to make some money. MARTIN agreed and MARTIN knew the job consisted of taking things from one place to another and being paid for it. MARTIN stated he knew he was carrying something illegal in his vehicle and was being paid for this trip. MARTIN admitted to making a prior trip in December of 2018, driving to Arkansas from California with an unknown female in her vehicle. MARTIN also admitted going to Arkansas with BARRERA in December of 2018, flying to DFW from California and then driving to Arkansas. MARTIN admitted he was supposed to pick up money and fly back with it for the same organization but the money never came through. MARTIN provided a phone number, address and a nickname of "CP". MARTIN stated MARTIN was supposed to go to the listed address provided for "CP" and "CP" was supposed to get the methamphetamine. MARTIN was asked if BARRERA was aware that MARTIN was going to visit "CP" on this trip. MARTIN stated that BARRERA was probably aware that MARTIN was going to meet "CP" because BARRERA was with MARTIN on MARTIN's last trip to Arkansas. SA Carson was able to identify "CP" as Cavan POLITE.

15. SA Carson was also able to identify that POLITE had sent seventeen hundred and fifty dollars ($1750) to BARRERA on December 16, 2018 through a money order. BARRERA was interviewed again on January 4, 2019 at approximately 3:47 p.m. SA

John Carson reminded BARRERA of her *Miranda* Warnings and that she did not have to speak with agents. BARRERA again waived those rights and agreed to speak with agents. BARRERA in her second interview admitted she knew the name of MARTIN'S friend they were going to visit was "CP". BARRERA was asked by SA's Carson and Ecker about receiving the money from "CP". BARRERA initially denied picking up any money. BARRERA then admitted to picking up money at a Wal-Mart and that the money was for MARTIN. MARTIN was in possession of a black and silver I-phone S cell phone Model A 1633, FCC ID BCG-E2946A. BARRERA was in possession of a gray Samsung cell phone Model SM-J327T1, IMEI 359214/09/256208/5.

16. SA Carson later tested the crystal like substance located by Trooper Styles in MARTIN's bag. The crystal like substance tested positive for the presence of methamphetamine. The two bundles together weighed approximately 2.4 kilograms. This amount of methamphetamine is consistent with distribution as opposed to someone's personal use.

17. The Affiant from being involved with countless investigation involving the smuggling and transportation of controlled substances into and across the United States knows it is the common practice for couriers to utilize a cell phone to maintain contact with the owner of the controlled substance for whom the couriers is working for. The owners of the controlled substance are placing the courier in possession of large amounts of a controlled substance with a whole sale value often times in the hundreds of thousands of dollars and a street level value often times in the millions of dollars. The owner of the controlled substance directing the courier will most often not be

the true owner of the narcotics and will most certainly have someone to answer to above them. The Affiant knows from training and experience that the owner of the controlled substance is risking heavy consequences including physical injury or death to them or even their family if the controlled substance becomes missing. The Affiant when searching cellular phones in possession of narcotics couriers in the past has found on nearly each and every occasion the narcotics couriers' cellular device contained evidence of their narcotics trafficking activity. This evidence included but wasn't limited to photographs, videos, text messages, emails, location data, call logs and contacts. The information unveiled the courier's illegal activities and other co-conspirators that were involved with the trafficking of the controlled substances. The Affiant from training and experience has found the courier of the controlled substance normally needs to check in with the person whom is directing them at least once a day if not several times a day. The Affiant knows in some cases the person directing the courier will even track the courier utilizing the cellphone. In the investigations where the Affiant has found the courier doesn't need to check frequently is where the courier has made countless deliveries for the drug trafficking organization and is well trusted. In these cases the courier at a minimum still had the contacts and in their cellular device for the person directing them to deliver the narcotics for and or the person they were delivery the narcotics to.

## Conclusion

Your Affiant submits that based upon the above facts, there is probable cause to believe that Brendan Terrence MARTIN and Araceli BARRERA has committed the offenses of Possession with Intent to Distribute a controlled substance, in violation of

Title 21, United States Code, Section 841(a)(1). I further believe that there is probable cause to believe that evidence, contraband, fruits of crime, items illegally possessed, and property designed for use, intended for use, and used in committing this crime (as itemized in Attachment B to the Application for Search Warrant) will be found in the black Apple I-phone S cell phone Model A 1633, FCC ID BCG-E2946A and a gray Samsung cell phone Model SM-J327T1, IMEI 359214/09/256208/5.

Accordingly, I respectfully ask for a warrant to search the premises under Rule 41 of the Federal Rules of Criminal Procedure.

_____
John Carson
Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN TO BEFORE ME on this 23 day of January, 2019.

_____
Lee Ann Reno
UNITED STATES MAGISTRATE JUDGE

_____
Anna Marie Bell
Assistant United States Attorney